# RUNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

JOSEPH BARBER, )
)
Petitioner, )
)
v. )          No. 1:21-CV-130 RLW
)
GREGORY HANCOCK,[1] )
)
Respondent. )

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Joseph Barber's pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1). Barber is incarcerated at the Missouri Eastern Correctional Center ("MECC"). For the following reasons, the Court will deny habeas relief.

### Procedural History

On December 4, 2014, a trial judge in the Circuit Court of the City of St. Louis, Missouri, found Barber guilty of two counts of first-degree robbery, in violation of Section 569.020, Missouri Revised Statutes (2000); two associated counts of armed criminal action, in violation of Section 571.015; and one count of resisting arrest, in violation of Section 575.150.[2] On March 13, 2015, the trial judge sentenced Barber as a persistent offender to twenty years' imprisonment for each robbery count, three years for each armed criminal action count, and five years for resisting arrest, to run concurrently, for a total term of twenty years' imprisonment.

---

[1]Gregory Hancock is the Warden at MECC, where Petitioner is currently incarcerated. Under Rule 2(a) of the Rules Governing Section 2254 cases in the United States District Courts "the petition must name as respondent the state officer who has custody." Therefore, Gregory Hancock will be substituted as the named Respondent in this action pursuant to Rule 25(d), Federal Rules of Civil Procedure.

[2]All statutory references are to the Revised Statutes of Missouri (2000), unless otherwise stated.

Barber filed a timely notice of appeal. The Missouri Court of Appeals affirmed Barber's conviction and sentence on April 5, 2016. State v. Barber, 485 S.W.3d 796 (Mo. Ct. App. 2016) (per curiam) (Resp. Ex. K, ECF No. 11-1).

Barber filed a pro se application for post-conviction relief under Missouri Supreme Court Rule 29.15 on May 26, 2016. Post-conviction counsel entered an appearance for Barber on June 30, 2016 but did not file an amended motion until May 31, 2017, accompanied by a "timeliness" motion to treat the amended motion as timely due to abandonment by post-conviction counsel, under State v. Sanders, 807 S.W.2d 493 (Mo. 1991) (en banc). The motion court granted the timeliness motion and held an evidentiary hearing on September 27, 2017, at which Barber and his trial counsel testified. The motion court addressed Barber's two claims regarding sentencing as a persistent offender by resentencing him at the hearing and entering a corrected judgment form, and denied the remainder of Barber's claims.

Barber appealed and the Missouri Court of Appeals remanded with instructions for the motion court to make a sufficient record of an independent inquiry into the issue of abandonment. Barber v. State, 569 S.W.3d 556 (Mo. Ct. App. 2019) (Resp. Ex. E, ECF No. 8-5). On remand, the motion court found that Barber was abandoned and accepted his amended Rule 29.15 motion as timely. The motion court readopted the findings of fact and conclusions of law it previously entered. Barber again appealed and the Missouri Court of Appeals affirmed the denial of his amended Rule 29.15 motion in all respects. Barber v. State, 626 S.W.3d 928 (Mo. Ct. App. 2021) (per curiam) (Resp. Ex. J, ECF No. 8-10.)

Barber filed the instant Petition under 28 U.S.C. § 2254 in this Court on September 13, 2021, and it appears to be timely filed pursuant to 28 U.S.C. § 2244(d)(1)(A). Respondent opposes the relief sought (ECF No. 8), and Barber filed a Reply (ECF No. 9) in support of his Petition.

**Grounds Raised**

The Petition raises five grounds for relief: (1) trial court error in denying Barber's motion to suppress identification evidence; (2) trial court error in denying Barber's motion for judgment of acquittal on the charge of resisting arrest; (3) ineffective assistance of trial counsel for failing to obtain Barber's informed consent to waive his right to jury trial; (4) ineffective assistance of trial counsel for failing to present a closing argument at Barber's bench trial; and (5) ineffective assistance of trial counsel for failing to present a closing argument without Barber's knowing, intelligent, and voluntary consent to waive his right to present closing argument.

**Factual Background**

The Missouri Court of Appeals described the facts of Petitioner's criminal case in the post-conviction appeal memorandum as follows:

> In late 2014, Movant was scheduled for a jury trial on two counts of robbery, two counts of armed criminal action, and one count of resisting arrest. Prior to trial, Movant approached his trial counsel with questions about bench trials. On December 1, 2014, Movant waived a jury trial in open court and affirmed that he had signed a written waiver of his right to a jury trial. A bench trial followed the next day.

> At trial, the evidence showed that after attending a martial arts show, Floy Stewart ("Stewart") and her friend, Jay Davis ("Davis"), drove in separate cars to Stewart's apartment in St. Louis City sometime after midnight on February 23, 2014. After arriving at her apartment, Stewart parked her car in a gated parking lot and then walked to the street to Davis's car. While Stewart talked with Davis from the passenger window, a man approached, grabbed Stewart from behind, put a gun to her head, and demanded that Stewart and Davis put their belongings in the At trial, the evidence showed that after attending a martial arts show, Floy Stewart ("Stewart") and her friend, Jay Davis ("Davis"), drove in separate cars to Stewart's apartment in St. Louis City sometime after midnight on February 23, 2014. After arriving at her apartment, Stewart parked her car in a gated parking lot and then walked to the street to Davis's car. While Stewart talked with Davis from the passenger window, a man approached, grabbed Stewart from behind, put a gun to her head, and demanded that Stewart and Davis put their belongings in the passenger's seat of Davis's car. After Stewart and Davis complied, the man ordered Davis out of the car and drove off with Davis's white Acura. Stewart and Davis contacted the police, and Davis gave a description of his car and the man.

3

A few hours later, an officer saw a vehicle being driven by Movant that matched the description of Davis's white Acura. After Movant parked the vehicle, the officer turned on his police lights. When Movant began exiting the vehicle, the officer ordered Movant to stop and show his hands. Movant began to comply, however, when the officer approached him, he ran, and the officer chased him. Movant was taken into custody, and Davis identified Movant as the robber from a lineup.

Movant testified in his own defense and denied robbing Stewart and Davis. Movant testified that he had rented Davis's vehicle from another individual in exchange for drugs. He admitted he fled from the officer because he had drugs on his person and discarded the drugs while he was being chased by the officer.

At the conclusion of the evidence, and after the trial court denied Movant's motion for judgment of acquittal at the close of all evidence, the trial court took the case under submission. No closing arguments were made by the State or trial counsel. Movant was sentenced to concurrent terms of imprisonment of twenty years for each robbery count, three years for each armed criminal action count, and five years for the resisting arrest count.

(Resp. Ex. J, ECF No. 8-10 at 2-3).

## Legal Standard

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), federal courts review state court decisions under a deferential standard. Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999).  Federal habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990) (citing § 2254(a)).

To obtain federal habeas review of a claim raised in a § 2254 petition, the petitioner must have first raised the federal constitutional dimensions of the claim in State court in accordance with State procedural rules. Duncan v. Henry, 513 U.S. 364 (1995) (per curiam); Beaulieu v. Minnesota, 583 F.3d 570, 573 (8th Cir. 2009) (quoted case omitted). Where the State court adjudicated a claim on the merits, federal habeas relief can be granted on the claim only if the State court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States," 28 U.S.C. § 2254(d)(1); or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). See Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time the petitioner's State conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

"A state court decision is 'contrary to' clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court confronts facts that are materially indistinguishable from relevant Supreme Court precedent yet reaches the opposite result." Zornes v. Bolin, 37 F.4th 1411, 1414 (8th Cir. 2022) (quoting Williams, 529 U.S. at 405-06). "A decision involves an 'unreasonable application of' federal law if the state court 'correctly identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context.'" Id. at 1414-15 (quoting Munt v. Grandlienard, 829 F.3d 610, 614 (8th Cir. 2016)). "To demonstrate an unreasonable application, a prisoner must show 'that a state court's adjudication was not only wrong, but also objectively unreasonable, such that "fairminded jurists" could not disagree about the proper resolution.'" Id. at 1415 (quoting Smith v. Titus, 958 F.3d 687, 691 (8th Cir. 2020)). Federal habeas courts "evaluate the reasonableness of the state court's ultimate conclusion, not necessarily the reasoning used to justify the decision." Id. (citing Dansby v. Hobbs, 766 F.3d 809, 830 (8th Cir. 2014)).

Finally, when reviewing whether a state court decision involves an "unreasonable determination of the facts" in light of the evidence presented in the state court proceedings, state court findings of basic, primary, or historical facts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Rice v. Collins, 546 U.S. 333, 338-39 (2006); Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007). Erroneous findings

of fact do not automatically require the grant of habeas relief, however. Instead, the determination of these facts must be unreasonable in light of the evidence of record. Collier, 485 F.3d at 423; Weaver v. Bowersox, 241 F.3d 1024, 1030 (8th Cir. 2001).

Federal courts are "bound by the AEDPA to exercise only limited and deferential review of underlying State court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). "To obtain habeas relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Metrish v. Lancaster, 569 U.S. 351, 358 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)). This standard is "difficult to meet." Id. "The writ of habeas corpus is an 'extraordinary remedy' that guards only against 'extreme malfunctions in the state criminal justice systems.'" Shinn v. Ramirez, 142 S. Ct. 1718, 1731 (2022) (quoting Harrington, 562 U.S. at 102).

## Evidentiary Hearing

A district court may dismiss a habeas petitioner's motion without an evidentiary hearing if "(1) the movant's allegations, accepted as true, would not entitle the movant to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Buster v. United States, 447 F.3d 1130, 1132 (8th Cir. 2006) (internal quotation marks omitted) (quoting Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003)). Barber does not appear to request an evidentiary hearing. Because the Court determines that Barber's claims do not warrant habeas relief on their face, it will deny the Petition without an evidentiary hearing.

## Discussion

A. <u>Ground One</u>

In Ground One, Barber asserts the trial court erred in overruling his motion to suppress evidence of victim Jay Davis's identification of Barber, and in admitting testimony regarding Davis's out-of-court and in-court identifications of Barber, because the identification was unreliable and was the result of impermissibly suggestive police procedures which created a substantial risk of misidentification and violated Barber's rights to due process and a fair trial. (ECF No. 1 at 9-11).

The Missouri Court of Appeals described the facts concerning the identification as follows:

> After Defendant was taken into custody, a detective notified Davis that his car had been found and that a suspect was in custody. The detective asked Davis to come to the Justice Center to view a physical lineup. Detective Brooks Lindhorst was in charge of the lineup. He had other officers find participants with physical characteristics similar to Defendant's for the lineup. The officers constructed the lineup with four participants. Before showing Davis the participants, Detective Lindhorst advised Davis, "The individual[s] you [a]re viewing may or may not be the actual suspect in the case. Please look carefully at all the physical attributes of each person, and after all who have been viewed, tell the law enforcement officer who's with you whether or not you recognize any of the individuals in the lineup and, if so, where they have seen this person before."

> From the one-way glass viewing room, Davis viewed the lineup participants one at a time separately in a sequential order. Detective Lindhorst was present with Davis in the viewing room. Davis identified Defendant, who was in position number four in the lineup, as the robber. After making the identification, Davis immediately told Lindhorst that Defendant was wearing what looked like Davis's leather jacket that was in the trunk of his car. Davis said the leather jacket should have a Kenneth Cole Reaction tag in the collar. The detective checked the jacket Defendant was wearing and confirmed it was a Kenneth Cole Reaction jacket. Police seized the jacket and booked Defendant on charges of first-degree robbery, armed criminal action, and resisting arrest.

> Defendant filed a motion to suppress the identification evidence in the case. After a pretrial hearing, the trial court denied the motion. The court conducted a bench trial. At trial, Defendant testified on his own behalf and denied being involved in the robbery. Defendant testified he obtained the Acura when the driver of the Acura offered to rent him the car for an hour in exchange for $20 worth of crack. Defendant testified he agreed to the deal, got in the car, and drove off. Defendant explained he ran when Officer Regan was walking towards him because

he did not want to get caught with drugs. Defendant also testified the leather jacket he was wearing when arrested and during the lineup was his deceased father's.

(ECF No. 11-1, Resp. Ex. K at 3-4) (footnote omitted).

The court then discussed Barber's claim and found it lacked merit because the identification was not the product of police suggestion:

Defendant asserts the trial court clearly erred and abused its discretion in overruling his motion to suppress Davis's identification and in admitting testimony regarding Davis's out-of-court and in-court identification of Defendant. Defendant argues that impermissibly suggestive police procedures created a substantial risk of misidentification, rendering Davis's identification unreliable. We disagree.

We will reverse a trial court's ruling on a motion to suppress only if it is clearly erroneous. *State v. Sund,* 215 S.W.3d 719, 723 (Mo. banc 2007). The trial court's ruling is clearly erroneous if we are left with a definite and firm belief a mistake has been made. *State v. Conrick,* 375 S.W.3d 894, 900 (Mo. App. W.D. 2012). We defer to the trial court's factual findings and credibility determinations, and we consider all evidence and reasonable inferences in the light most favorable to the trial court's ruling. *Id.* We consider evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling. *State v. Pike,* 162 S.W.3d 464, 472 (Mo. banc 2005).

"Identification testimony is admissible unless the pretrial identification procedure was unnecessarily suggestive *and* the suggestive procedure made the identification unreliable." *State v. Middleton,* 995 S.W.2d 443, 453 (Mo. banc 1999) (emphasis in original). Accordingly, in determining whether to admit identification evidence, courts employ a two prong test. *Foster v. State,* 348 S.W.3d 158, 161 (Mo. App. E.D. 2011). First, the court considers whether the identification procedure was unduly suggestive. *Id.* at 161-62. Police procedure is unduly suggestive if the witness's identification of the defendant results from the procedure or actions of the police, rather than from the witness's recollections of his or her firsthand observations. *State v. Body,* 366 S.W.3d 625, 629 (Mo. App. E.D. 2012). If the procedure was not unduly suggestive, the identification evidence is admissible and it is neither necessary nor appropriate for the court to review the reliability of the identification. *State v. Chambers,* 234 S.W.3d 501 , 513 (Mo. App. E.D. 2007).

If the court finds the procedure was unduly suggestive, then it considers the second prong: "whether the suggestive procedures have so tainted the identification as to lead to a substantial likelihood that the pre-trial identification was not reliable." *Foster,* 348 S.W.3d at 162 *(quoting Chambers,* 234 S.W.3d at 513). "Reliability, not suggestiveness, determines the admissibility of identification testimony." *State v. Bush,* 372 S.W.3d 65, 68 (Mo. App. W.D. 2012) (internal quotation and citation omitted).

Here, Defendant alleges the police procedures were impermissibly suggestive for four reasons: (1) Davis's identification of Defendant was possibly influenced by the leather jacket Defendant was wearing during the lineup because it appeared similar to the one Davis had in his car; (2) Davis told the police that the robber had facial hair like a goatee when Defendant had a full beard; (3) Davis's description of the robber was that he was short, and Defendant was several inches shorter than the other participants in the lineup; and (4) the officer who selected the participants in the lineup did not testify at the suppression hearing or at trial.

At the suppression hearing and trial, Detective Lindhorst testified to the procedure used by the police department for creating a lineup. The procedure was used to create Defendant's lineup. Lindhorst explained, generally, in constructing a physical lineup, officers escort the suspect to the Justice Center, go through the holding tanks and select a number of participants who have similar physical characteristics to the suspect. Lindhorst testified he had two officers follow this "common practice and procedure" and construct the physical lineup. Lindhorst did not know how many lineup participants there would be, but knew Defendant was going to be in the lineup.

Lindhorst further testified he conducted Davis's viewing of the physical lineup. Before Davis started the viewing, he advised Davis,

> "The individual(s] you (a]re viewing may or may not be the actual suspect in the case. Please look carefully at all the physical attributes of each person, and after all who have been viewed, tell the law enforcement officer who's with you whether or not you recognize any of the individuals in the lineup and, if so, where they have seen this person before."

Davis testified police did not instruct him who to choose or make any threats or promises to him so he would identify Defendant. Davis further testified Lindhorst stayed quiet for the whole process and "would not even answer any of [his] questions."

During the lineup, Lindhorst testified he and Davis were in the one-way glass viewing room. The participants in the lineup would walk into the other side of the room individually and separately. When participant number one entered the lineup room by himself, Davis would inform Lindhorst whether the person was the suspect in the case. If not, the participant was escorted out. The same process was repeated until participant number four, Defendant, entered the room.

When Defendant entered the room, Davis paused and told Lindhorst that number four was the man who robbed him and Stewart. Davis told Lindhorst he specifically recognized Defendant's face from the robbery and he was "very" certain of his identification. Then, Davis told Lindhorst that he believed Defendant was wearing his leather jacket which he left in his car. Lindhorst informed the other officers in the lineup room about the jacket. The officers confirmed the jacket had the same Kenneth Cole brand name tag as described by Davis. Prior to Davis's

identification of the jacket, the officers, including Lindhorst, did not know the jacket was at issue. Lindhorst testified that the officers did not tell Defendant what to wear during the lineup and that Defendant was wearing the jacket when arrested and during the lineup on his own will.

After reviewing the record, we find no evidence that the identification procedures used by the police were unnecessarily suggestive. The police followed the common practice and procedure in constructing the lineup and made a reasonable effort to select participants from the population pool at the Justice Center who resembled Defendant. Davis viewed the participants individually and separately and, accordingly, comparison between participants was minimized. Davis testified he was "very certain" of his identification of Defendant and he specifically remembered Defendant's face from the robbery. We find the evidence in the record is sufficient to support the trial court's denial of Defendant's motion to suppress.

Despite the neutrality of the police action, Defendant argues that the police procedures were unduly suggestive because Davis's identification of Defendant was possibly influenced by the leather jacket which Defendant was wearing during the lineup and which appeared similar to the one Davis had in his car. However, our ultimate question regarding whether the procedures used were unduly suggestive is whether the identifications came from the witness's own recollection or from some procedure or action employed by the police. *Body,* 366 S.W.3d at 629. Here, the record clearly shows that the police did not know the jacket was at issue until Davis told Lindhorst about the jacket and, accordingly, did not take any action regarding the jacket prior to the lineup. The record indicates Defendant was wearing the jacket when arrested and during the lineup on his own will. Furthermore, the record clearly shows Davis identified Defendant from the lineup based on his recollection of Defendant's face at the time of the robbery, not based on any procedure or action employed by the police.

Likewise, Defendant's argument that the police procedures were unduly suggestive because Davis first told the police that the robber had facial hair like a goatee when Defendant had a full beard is without merit. "Lineup participants will never be identical, and the law does not require exact conformity to ensure a fair procedure." *State v. Green,* 469 S.W.3d 881 , 884 (Mo. App. E.D. 2015) (citation omitted). Davis identified Defendant with certainty based on his recollection of Defendant's face from the robbery. Davis further testified that, even though Defendant's facial hair was not a "plain goatee," he would not describe it as a "full beard." Regardless of the label he used, Davis accurately described the robber had "some facial hair" and identified Defendant from the lineup based on his recollection of Defendant's face. Thus, viewing this evidence in the light most favorable to the verdict, we find the fact that Defendant had a full beard rather than a goatee did not rise to the level of undue suggestion here.

Defendant next argues that the police procedures were unduly suggestive because Davis's description of the robber was that he was short, and Defendant was several inches shorter than the other participants in the lineup. However, police are

only required to use reasonable efforts to find physically similar participants, and "differences in age, weight, height, hairstyle, and other physical characteristics do not compel a finding of impermissible suggestiveness." *Chambers,* 234 S.W.3d at 514. Furthermore, Davis viewed the lineup participants individually and separately. Accordingly, their height differences were minimized and they did not rise to the level of undue suggestion here. *See State v. Wills,* 577 S.W.2d 655, 657 (Mo. App. S.D. 1979) *(citing United States v. Lewis,* 547 F.2d 1030, 1035 (8th Cir. 1976) ("[w]hile appellant was the shortest of six men, he was not significantly so; none of the men was unusually tall and all were within a range of about four inches")).

Lastly, Defendant argues that the police procedures were unduly suggestive because the officer who selected the participants in the lineup did not testify at the suppression hearing or at trial. However, the record indicates Lindhorst asked other officers to find participants for the lineup among the population at the Justice Center that had similar characteristics to Defendant's, which was the standard police procedure. Pursuant to our standard of review, we find it reasonable to infer, in the light most favorable to the verdict, that the officers followed the standard police procedure and made a reasonable effort to select participants with characteristics similar to Defendant's. *See Conrick,* 375 S.W.3d at 900. Nothing in the record suggests to the contrary.

Having reviewed the record in the light most favorable to the trial court's ruling, we find the lineup procedures were not impermissibly suggestive. On appeal, Defendant has failed to demonstrate otherwise. Accordingly, we need not review the reliability of the identification. *See Chambers,* 234 S.W.3d at 513. We conclude that sufficient evidence supports the court's ruling denying Defendant's motion to suppress and admitting testimony regarding Davis's out-of-court and in-court identification of Defendant. Therefore, the trial court neither clearly erred nor abused its discretion. Point denied.

(ECF No. 11-1, Resp. Ex. K at 5-10.)

"Generally, in the habeas context, '[q]uestions regarding admissibility of evidence are matters of state law." Sittner v. Bowersox, 969 F.3d 846, 849-50 (8th Cir. 2020) (quoting Rousan v. Roper, 436 F.3d 951, 958 (8th Cir. 2006)). "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." Id. (quoting Bucklew v. Luebbers, 436 F.3d 1010, 1018 (8th Cir. 2006)). Accordingly, to succeed on an evidentiary claim, a state petitioner "must show 'that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial

fundamentally unfair.'" Id. at 850 (quoting Rousan, 436 F.3d at 958-59); see also Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995)).

Here, Barber has not established a due process violation based on admission of the victim's out-of-court and in-court identifications. See Anderson, 44 F.3d at 679 (for a due process violation to occur from an evidentiary ruling, the ruling must have been wrong and the petitioner must show that "absent the alleged impropriety the verdict probably would have been different."). The Missouri Court of Appeals' decision that the police identification procedures were not impermissibly suggestive is not contrary to, nor is it an unreasonable application of, clearly established law as determined by United States Supreme Court, nor is it a decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §§ 2254(d)(1), (2); Williams, 529 U.S. at 379. As such, the decision is entitled to deference.

Ground One is denied.

B. Ground Two

In Ground Two, Barber alleges the trial court erred in overruling his motion for judgment of acquittal for resisting a felony arrest because the State failed to prove he was guilty of the charge beyond a reasonable doubt, in violation of his due process rights. Barber contends the evidence showed a policy stop or detention only, and not an arrest. (ECF No. 1 at 12-16.)

The Missouri Court of Appeals discussed this ground and concluded it was without merit because Barber took the stand and admitted he knew the officer intended to arrest him, and his attorney told the court she anticipated Barber would admit that he did, in fact, resist arrest. The court also found that the State presented sufficient evidence from which a trier of fact could have found Defendant guilty of the offense of resisting arrest beyond a reasonable doubt, based on the officer's testimony:

> Defendant asserts the trial court erred in denying his motion for judgment of acquittal for resisting a felony arrest because the State failed to prove that he was

guilty of the charge beyond a reasonable doubt. Defendant argues that the evidence only established that Defendant resisted a stop or detention, not an arrest. We disagree.

"In reviewing the sufficiency of the evidence in a court-tried criminal case, the same standard is applied as in a jury tried case." *State v. Niederstadt,* 66 S.W.3d 12, 13 (Mo. banc 2002) ( citations omitted). Our role is limited to a determination of whether the State presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty of the offense charged beyond a reasonable doubt. *Id.* at 13-14. We will consider the evidence and all reasonable inferences reasonably drawn therefrom in the light most favorable to the verdict and disregard contrary evidence and inferences. *Id.*

> Section 575.150.1 provides:
> A person commits the crime of resisting or interfering with arrest, detention, or stop if, knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an individual or vehicle, or the person reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or lawfully stop an individual or vehicle, for the purpose of preventing the officer from effecting the arrest, stop or detention, the person:
> (1) Resists the arrest, stop or detention of such person by using or threatening the use of violence or physical force or by fleeing from such officer; or
> (2) Interferes with the arrest, stop or detention of another person by using or threatening the use of violence, physical force or physical interference.

Accordingly, to prove that Defendant committed the offense of resisting arrest, the State needed to establish three elements: (1) that Defendant knew or reasonably should have known that a law enforcement officer was making an arrest; (2) that he resisted this arrest by fleeing from that officer; and (3) that he did so for the purpose of preventing the officer from effecting the arrest. *State v. Pierce,* 433 S.W.3d 424, 434 (Mo. banc 2014).

"[W]hen a defendant makes a voluntary judicial admission . . . , it serves as a substitute for evidence and dispenses with proof of the actual fact." *State v. Denzmore,* 436 S.W.3d 635, 643 (Mo. App. E.D. 2014) (internal quotation and citations omitted). An admission of guilt regarding a charged crime can be sufficient to waive the production of evidence regarding all elements of the charged crime. *See id.* at 643 (concluding defense counsel's opening statement that defendant was guilty of felony leaving scene of accident was sufficient to waive production of evidence relating to that charge).

Here, Defendant admitted at trial that he knew that the officer intended to arrest him. Defendant testified he believed that the officer had seen his drug deal and was "fixing to get [him]." Defendant also admitted he ran away from the officer

because he did not want to get caught with the drugs. Furthermore, defense counsel told the court in her opening statement the following:

> Your Honor, I also anticipate you will hear from my client in this case, who does wish to testify, and will inform the Court exactly how he came into possession of that car and will explain to the Court why *he did, in fact, resist arrest* on February 23, 2014.

(emphasis added). Accordingly, Defendant waived the State's burden of producing evidence relating to the charge of resisting arrest. *See, e.g., McMullin v. State,* 686 S.W.2d 549, 551 (Mo. App. E.D. 1985) (holding the movant's attorney's admission that the movant had been represented by counsel at prior convictions waived the production of evidence that the movant was actually represented by counsel). Defendant's admissions were sufficient to meet the State's burden of proof as to each element comprising the felony charged. *See Denzmore,* 436 S.W.3d at 643.

Nevertheless, the State also produced sufficient evidence from which a trier of fact could have found Defendant guilty of the offense of resisting arrest beyond a reasonable doubt. Officer Regan testified that he followed Defendant believing that Defendant was guilty of stealing a motor vehicle or first-degree tampering, both felony crimes. The officer did not have his lights and siren activated when following Defendant because he was waiting for backup. As soon as Defendant pulled over to a parking spot and exited the Acura, the officer activated his lights. The officer then exited his patrol car and approached Defendant. With his gun and flashlight pointed at Defendant, the officer gave Defendant a verbal command to "Show me your hands." As Defendant began complying with the command, the officer told him to place his hands on top of the vehicle and continued to walk towards him. The officer further testified he intended to handcuff Defendant for committing either the stealing or tampering when approaching Defendant. Defendant suddenly took off running across the street and the officer chased him.

Defendant argues the evidence the State presented was that he resisted a stop or detention, not an arrest. However, "[i]t is not necessary for the officer to specifically say, 'you are under arrest,' when the circumstances indicate the officer is attempting an arrest." *State v. Chamberlin,* 872 S.W.2d 615, 619 (Mo. App. W.D. 1994). Proper circumstantial evidence is sufficient to support a conviction of resisting arrest. *State v. Gibbs,* 224 S.W.3d 126, 137 (Mo. App. W.D. 2007).

Under these circumstances and reasonable inferences drawn therefrom, we find sufficient evidence from which a trier of fact could have reasonably found Defendant guilty of the offense of resisting arrest beyond a reasonable doubt. The evidence shows that Defendant should have known that the officer was making an arrest when the officer pointed a gun at Defendant while giving specific verbal commands to show hands and put hands on the vehicle. *See State v. Stewart,* 296 S.W.3d 5, 14 (Mo. App. S.D. 2009) (holding law enforcement officers' specific instructions to exit the vehicle with hands up indicated their intent to arrest the defendant). The evidence shows that Defendant resisted this arrest by fleeing from that officer. The evidence also shows that Defendant did so for the purpose of

> preventing the officer from effecting the arrest. Therefore, the trial court did not err in denying Defendant's motion for judgment of acquittal for resisting a felony arrest. Point denied.

(ECF No. 11-1 at 10-13.)

A state appellate court's conclusion that the evidence was sufficient to support a criminal conviction is entitled to great deference by a federal court. Jackson v. Virginia, 443 U.S. 307, 323 (1979). Under Jackson, a habeas petitioner is entitled to relief if a federal habeas court "conclude[s] that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Nash v. Russell, 807 F.3d 892, 897 (8th Cir. 2015). In applying this standard, the federal habeas court does not re-weigh the evidence and must resolve any inconsistencies in favor of the prosecution. Id.

Under the AEDPA, this Court may grant relief only if it finds the Missouri Court of Appeals' "conclusion that the evidence satisfied the Jackson sufficiency of the evidence standard both incorrect and unreasonable." Id. "[W]hether the record contains sufficient evidence to establish each element of the crime beyond a reasonable doubt 'is everyday business for the state courts, grist for their mill, and it will be a rare case in which a federal court on habeas will disagree with them.'" Cassell v. Lockhart, 886 F.2d 178, 179 (8th Cir. 1989) (quoted case omitted).

Upon review of the record, the Court concludes the Missouri Court of Appeals' determination that the evidence was sufficient for the trial court to find Barber guilty of resisting arrest is entitled to deference. The Court cannot say, based on the record evidence adduced at the trial, that no rational trier of fact could have found proof of guilt beyond a reasonable doubt on the resisting arrest charge. See Nash, 807 F.3d at 897. The Missouri Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established Federal law, nor was it a decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §§ 2254(d)(1), (2); Williams, 529 U.S. at 379.

Ground Two is denied.

C. Ground Three

In Ground Three, Barber asserts his trial counsel was ineffective for failing to obtain his informed consent to waiver of his right to a jury trial, and contends he was prejudiced as a result because, but for counsel's ineffectiveness, "there is a reasonable probability that the outcome of Petitioner's trial would have been different in that Petitioner would have asserted his right to a jury trial." (ECF No. 1 at 17-18.)

The Missouri Court of Appeals considered this ground on review of the post-conviction denial of Barber's Rule 29.15 motion, and found it was without merit. The court first articulated its standard of review for claims of ineffective assistance of counsel, and then applied the standard to Barber's claim:

> To prove ineffective assistance of counsel, a movant must demonstrate: (1) his counsel's performance failed to conform to the degree of skill and diligence of a reasonably competent attorney under similar circumstances; and (2) the movant was prejudiced by that failure. *McLaughlin v. State,* 378 S.W.3d 328, 337 (Mo. banc 2012). If a movant fails to meet his burden of establishing either the performance or the prejudice prong, then we need not consider the other. *Roberts v. State,* 535 S.W.3d 789, 797 (Mo. App. E.D. 2017).
>
> To satisfy the first prong, a movant must overcome the strong presumption that trial counsel's conduct was reasonable and effective by identifying "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Hoeber v. State,* 488 S.W.3d 648, 655 (Mo. banc 2016) (quoting *Johnson v. State,* 406 S.W.3d 892, 899 (Mo. banc 2013)). The prejudice prong requires a movant to show that there is a "reasonable probability that, but for counsel's errors, the outcome would have been different." *Id*. (internal quotations and citation omitted).
>
> . . . .
>
> In his first point on appeal, Movant asserts the motion court erred in denying his claim that "trial counsel was ineffective for failing to obtain [Movant's] informed consent of [his] waiver of his right to a jury trial" and was thereby prejudiced.
>
> In a criminal case, a defendant is guaranteed the right to a jury trial. *Epkins v. State*, 335 S.W.3d 523, 527 (Mo. App. S.D. 2011). However, "any defendant may, with the assent of the court, waive a jury trial and submit the trial of such case

to the court, whose finding shall have the force and effect of a verdict of a jury." *Id*. (internal quotations and citation omitted). A defendant's waiver of the right to a jury trial must appear in the record with unmistakable clarity and the waiver must be made knowingly, voluntarily, and intelligently. *State v. Harvey*, 348 S.W.3d 169, 172 (Mo. App. E.D. 2011).

Movant argues that there was nothing specific in trial counsel's testimony that contradicted his testimony that trial counsel advised him to select a bench trial and he would not be found guilty of the charges against him. We disagree. At the evidentiary hearing, trial counsel testified that when Movant inquired about bench trials, she informed Movant of his option between a bench trial and a jury trial and that "it was his choice." Trial counsel denied guaranteeing a specific outcome if Movant chose a bench trial. Although Movant highlights his testimony to support his claim of ineffective assistance of counsel, "the motion court is free to believe or disbelieve any evidence, whether contradicted or undisputed, including the movant's testimony[.]" *Dishmon v. State*, 248 S.W.3d 656, 661 (Mo. App. S.D. 2008) (internal quotations and citation omitted). Here, the motion court found trial counsel's testimony credible, and we defer to the motion court's credibility findings. *See Voss v. State*, 570 S.W.3d 184, 196 (Mo. App. E.D. 2019) ("[W]e defer to the court's credibility determinations on witness testimony because of the motion court's superior ability to judge the credibility of the witnesses.").

Furthermore, the record demonstrates that the trial court asked Movant a series of questions and Movant repeatedly affirmed in open court that he wished to have a bench trial, understood that he was waiving his right to a jury trial, and had signed a waiver stating he had been advised of his right to proceed to trial by jury and was electing to proceed with a bench trial. The trial court also informed Movant that its verdict of guilty or not guilty would depend *only* on the evidence presented. Thus, the record supports that Movant waived his right to jury trial voluntarily, knowingly, and intelligently. When the trial transcript reflects, as it does in this case, that Movant appeared in open court and expressed his desire to waive a jury trial, we cannot find the motion court clearly erred in denying his claim of ineffective assistance of counsel. *See e.g. Gray v. State*, 318 S.W.3d 278, 282 (Mo. App. S.D. 2010).

Movant was afforded an evidentiary hearing, and credible substantial evidence was presented that Movant was informed of his right to a jury trial and that he knowingly, intelligently, and voluntarily waived it. Therefore, the motion court did not clearly err in denying Movant's claim.

(ECF No. 8-10 at 5-7.)

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. <u>Strickland</u>, 466 U.S. at 686. The Supreme Court set forth the standard governing ineffective assistance of counsel claims in <u>Strickland</u>. To establish ineffective assistance, a habeas

petitioner must show that (1) his counsel's performance was deficient, or that it "fell below an objective standard of reasonableness," and also that (2) "the deficient performance prejudiced the defense." Id. at 687-88. Strickland provides a "highly deferential" standard to review ineffective assistance of counsel claims by having courts "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 689).

On federal habeas review, this Court does not determine whether Barber's trial counsel provided effective assistance, but instead examines "whether the state court's application of the Strickland standard was unreasonable." See Harrington, 562 U.S. at 101; see also Strickland, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").

The standard on federal habeas review "is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 562 U.S. at 101. Instead, the Court must determine "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. at 105. "Counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Gray v. Norman, 739 F.3d 1113, 1117 (8th Cir. 2014) (quoting Strickland, 466 U.S. at 690). "Where a state court concludes that there was no ineffective assistance under this 'highly deferential' standard, a federal court then must review counsel's performance under the 'deferential lens of § 2254(d).'" Id. (quoting Cullen v. Pinholster, 563 U.S. 170, 190 (2011)).

The Missouri Court of Appeals applied the correct legal standard, addressed Barber's claim, concluded that Barber's trial counsel was not ineffective because the record showed Barber

knowingly and voluntarily waived his right to a jury trial, and deferred to the motion court's credibility finding that trial counsel did not guarantee Barber a specific outcome if he selected a bench trial.

The Court determines that the Missouri Court of Appeals' application of the <u>Strickland</u> standard to this claim of ineffective assistance of defense counsel was not unreasonable for the reasons stated by that court.  <u>See</u> <u>Owens</u>, 198 F.3d at 681; <u>Harrington</u>, 562 U.S. at 101.

Ground Three is denied.

D. <u>Grounds Four and Five</u>

In Ground Four, Barber asserts that his trial counsel was ineffective for failing to present a closing argument as reasonably competent counsel would have done and, if trial counsel had presented a closing argument, there is a reasonable probability he would have been acquitted of some or all of the charges. (ECF No. 1 at 19-20.) In related Ground Five, Barber asserts that his trial counsel was ineffective for failing to present a closing argument without Barber's knowing, intelligent, and voluntary consent to the waiver of his right to present closing argument. (<u>Id.</u> at 21-22.)

The Missouri Court of Appeals discussed these claims together and found that neither had merit, as counsel's performance did not fall outside the wide range of professional competence for either of the reasons Barber claims:

> In his second and third points on appeal, Movant asserts the motion court clearly erred in denying his claim that trial counsel was ineffective for failing to make a closing argument and for waiving closing argument without Movant's consent.
>
> A criminal defendant's Sixth Amendment right to assistance of counsel includes an absolute right to present a closing argument and this right applies in both jury and non-jury cases. *State v. C.J.W.*, 274 S.W.3d 547, 549 (Mo. App. E.D. 2008). A closing argument not only aids in sharpening and clarifying the issues for resolution by the trier of fact, but it also offers trial counsel the last real opportunity to persuade the trier of fact that there may be a reasonable doubt as to the defendant's guilt. *Lowe v. State*, 779 S.W.2d 334, 336–37 (Mo. App. W.D. 1989).

Movant alleges that because he has a constitutional right to make a closing argument, any waiver by his attorney amounts to ineffective assistance of counsel. We disagree. While a defense counsel's failure to make a closing argument should not be blithely dismissed as a "trial strategy" decision, the failure to make a closing argument is not ineffective assistance per se. *Id.* at 337. "Waiver of closing argument may reasonably be based on tactical considerations." *Id*. At the evidentiary hearing, trial counsel testified that while she customarily presented a closing argument during jury trials, she had conducted bench-trial cases where she did not make a closing argument. Trial counsel explained that she believed the trial court had heard all of the evidence once it had taken the case under submission and that her failure to present a closing argument was not unreasonable under the circumstances. While trial counsel acknowledged that she did not make a closing argument, there is no evidence that her performance fell outside the wide range of professional competent assistance.

Moreover, Movant argues that "[b]ecause trial counsel failed to consult with or otherwise advise [Movant] about his right to closing argument and failed to give a closing argument, trial counsel was ineffective for waiving [Movant's] right to a closing argument without obtaining his knowing, intelligent and voluntary consent." Movant overstates the breadth of the right to make a closing argument to include an element of consent. "[W]hether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *Gonzalez v. United States*, 553 U.S. 242, 248 (2008) (internal quotations and citation omitted). For certain fundamental rights, the defendant must personally make an informed waiver, but for other rights, waiver may be effected by action of counsel. *Id*. Some decisions reserved for the defendant include "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." *McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018). Conversely, "[t]rial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence." *Id.* (quotations and citations omitted). Numerous choices affecting the conduct of the trial depend, in part, upon tactical considerations in the moment and the larger strategic plan for the trial and these matters can be difficult to explain to a layperson. *Gonzalez*, 553 U.S. at 249. "To hold that every instance of waiver requires the personal consent of the client himself or herself would be impractical." *Id*. at 250. While a movant has the right to present a closing argument, a movant's right to a closing argument does not require the trial court or trial counsel to expressly inquire of the defendant whether he is waiving his closing argument. *See State v. C.J.W.*, 274 S.W.3d at 550 and *State v. Hale*, 472 S.W.2d 365, 367 (Mo. 1971).

Lastly, Movant cites to *Pilchak v. Camper*, 741 F. Supp. 782 (W.D. Mo. 1990), *Fisher v. Gibson*, 282 F.3d 1283 (10th Cir. 2002), and *Com. v. Sparks*, 372 Pa. Super. 463 (1988) to support his argument that a new trial is warranted due to trial counsel's failure to present a closing argument. We decline to follow the cases cited by Movant, not because we discern that they reached a wrong result, but

because those decisions did not hinge solely on the failure by trial counsel to make a closing argument. Rather, those courts considered trial counsels' cumulative trial management decisions in conjunction with their failure to make a closing argument and concluded their performance fell below the level of professional skill customary of a competent attorney. *See Pilchak*, 741 F. Supp. at 797–98 (finding that when movant's 14 claims of ineffective assistance of counsel were viewed cumulatively, trial counsel's performance clearly fell below the level of professional skill customary of a competent counsel similarly situated); *Fisher*, 282 F.3d at 1305 (finding it was unreasonable for trial counsel to waive closing argument because counsel failed to advance a theory of defense in other portions of the trial and his actions almost certainly hurt defendant's case); and *Com.*, 372 Pa. Super. at 468 (finding trial counsel was ineffective for failing to make a closing argument in light of the fact that he also failed to make an opening statement and the evidence was complicated, ambiguous, and conflicting on both sides). Here, the failure to present a closing argument is the only alleged ineffective act by trial counsel during the course of the trial.

After reviewing the entire record, this Court is not left with a definite and firm impression that a mistake has been made by the motion court. Therefore, the motion court did not clearly err in denying Movant's claims.

Points II and III are denied.

(ECF No. 8-10 at 7-10) (footnote omitted).

The Missouri Court of Appeals applied the correct legal standard of <u>Strickland</u>, 466 U.S. 668, addressed Barber's claims, and concluded that he failed to show his counsel was ineffective for not making a closing argument and for not obtaining his express waiver of the right to make a closing argument.

The Court determines that the Missouri Court of Appeals' application of the <u>Strickland</u> standard to these claims of ineffective assistance of defense counsel was not unreasonable for the reasons stated by that court.  <u>See</u> <u>Owens</u>, 198 F.3d at 681; <u>Harrington</u>, 562 U.S. at 101.

Grounds Four and Five are denied.

## Conclusion

For the foregoing reasons, the Court concludes that Petitioner Joseph Barber's claims set forth in his pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody fail on the merits.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Joseph Barber's pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner has not made a substantial showing of a denial of a constitutional right, or that the issues presented were adequate to deserve encouragement to proceed further, and this Court will not issue a Certificate of Appealability.

**IT IS FURTHER ORDERED** that the Clerk of Court shall modify the docket sheet and short caption to reflect the substitution of Respondent Gregory Hancock pursuant to Federal Rule of Civil Procedure 25(d).

A separate Judgment in accordance with this Memorandum and Order will be filed herewith.

_Ronnie L. White_
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 6th day of May, 2024.